MEMORANl)V\1 OF DECISION

EAGAN, Judge.

BACKGROUND

This case was tried to the Gaming Disputes Court for 3 days, during which 7 witnesses testified. The plaintiff, Frank Wilson, Jr., was seated in a slot machine chair when the back of the chair broke. Plaintiff fell from the broken chair onto the floor, landing on his buttocks and back. Casino paramedics transported plaintiff to a hospital emergency room, where he was treated and released to follow-up care by his own physician.
After this fall at the Casino, plaintiff made attempts to return to work, but was frustrated by neck and back pain. Eventually, on December 21, 2001, he ceased working and has not returned to work since that date. Several physicians have treated the plaintiff since his fall at the Casino and the fall precipitated a surgical back procedure at Yale New Haven Hospital.
Because the defendant has admitted liability, the issue before the Court is limited to damages, requiring a determination of the extent of plaintiffs injuries as a result of his fall, past and future medical expenses, his past and future lost wages, and any non-eeonomie damages.
The determination of the damages plaintiff sustained as a result of his fall at the Casino is complicated by the fact that he previously had sustained injuries to his lower back and neck. During the 1990⅛, plaintiff was twice injured while working for his employer, Electric Boat. Both injuries involved his lower back and neck, for which he received a worker’s compensation settlement. In 1992, plaintiff was in an automobile accident, causing further injury to his back and neck. Additionally, prior to his fall at the Casino, plaintiff had other incidental medical problems affecting his *556 well being and ability to work, including a degenerative congenital spinal canal steno-sis.
All of these factors resulted in plaintiff becoming dependent on prescription drags such as Oxyeontin and Percocet, prior to his fall at the Casino.
The medical experts’ testimonies are contradictory as to the causal relationship between the plaintiffs .fall at the Casino and his present condition, including his resultant disability and ability to resume work. Thus, the Court must decide the extent to which plaintiffs present medical condition, his medical expenses, his lost wages, and his ability to work in the future, are attributable to his fall at the Casino, in view of plaintiffs prior injuries, medical ailments, and drug dependency. Future surgery is unlikely to cure any of plaintiffs medical problems.

FINDING OF FACTS

1. On March 27, 1990, while working for his employer, Electric Boat, the plaintiff suffered a back injury from lifting a steel beam.
2. He was primarily treated by an orthopedic physician who prescribed pain relief medications, physical therapy and restricted him from work for one month.
3. On January 24, 1991, his treating neurologist issued a report after the plaintiffs first MRI of record.
4. In his report, Dr. Pugsley diagnosed a chronic lumbar strain with back pain radiating to his right buttock, bilateral low back and thigh pain with numbness. No surgery was recommended.
5. The plaintiff was awarded a 5% partial permanent disability rating related to the March 27, 1990 worker’s compensation injury.
6. Plaintiff continued medical treatment, including a chiropractor who found the plaintiff had chronic strain symptoms of the low back with pain radiating to his left posterior thigh. He advised further tests to rale out a disc problem.
7. On March 12, 1991, a myelogram was performed which revealed a mild bulging of the central disc at L5-S1.
8. On April 6, 1992, the Eastern Shore Chiropractic Center noted that the plaintiff developed gastritis (GERD), gastro esophageal reflux disease which condition still exists and requires frequent medication.
9. In April 1992, the plaintiff was still being treated by his chiropractor for the complaint of chronic low back pain radiating into the right leg and foot. This treatment continued until the plaintiffs motor vehicle accident on July 23, 1992.
10. On July 23, 1992, the plaintiff was involved in an automobile accident. He was treated at the emergency room at Lawrence and Memorial Hospital and later by his own orthopedic, Dr. Sapere, who found neck and low back pain with sciatica. Dr. Sapere also found a reduction of the neck range of motion with limited movement of the lower back and the reversal of a lumbar lordosis. The doctor further found, after an examination of the hospital x-ray of the neck, degeneration of Lo-Lfi disc base. He noted degenerative changes at multiple levels of the lumbar spine and a narrowed disc base at L5-S1. His diagnosis was cervical and lumbar strain superimposed on a pre-existing disc disease of the neck and back. He prescribed medication and absence from work.
11. On August 27, 1992, the plaintiff was seen by a neurologist, Dr. Shilling,: who noted headaches and lower back pain radiating to the right leg. This doctor ordered a CT scan of the lumbar spine which was accomplished in August 1992. It showed a central disc bulge at L5-S1. *557 Ho continued treatment with the plaintiff for this condition until 1993.
12. On January 19, 1993, the MRI of the cervical spine showed a congenital spondylosis (a fairly small spinal canal).
.13. Examinations by Dr. Shilling in January and February 1993, noted left arm pain.
14. On June 30, 1993, plaintiff was injured again while lifting a tool box during his work at Electric Boat. He was treated by Dr. Shilling and other orthopedic doctors for back injury and radiating pain down the right leg. Epidural steroid injections were tried, to no avail.
ló. Prior to his injuries at Electric Boat, the plaintiff was employed in a mechanic’s position that was physically demanding. Because of his injuries, he was forced to accept a mechanic’s position that involved less strenuous work.
16. On September 23, 1993, plaintiffs treating physician reported that plaintiff had pain radiating down two to four fingers of his hand.
17. On October 6, 1993, Dr. Shilling opined that the plaintiff has an impairment of the neck; with an MRI finding of congenital spinal stenosis, worse at C3-C4, with chronic pain, and noted significant low back pain and right leg pain down to the foot and numbness on the left side, as well .as into the plaintiffs feet.
18. On November 3, 1993, a lumbar MRI showed central bulging at L5-S1 with an annular tear (outer rim of the disc).
19. In January and March of 1994, the ^plaintiffs doctors awarded him a 9% impairment of the lumbar spine which in March of 1994 was increased by Dr. Mal-etees, an orthopedic physician, to 14% impairment of the lumbar spine due to his recent injury.
20. In April 1994, Dr. Derby, an orthopedic IME doctor, found that, due to the worker’s compensation injury of 1993, the plaintiff had sudden low back pain and right leg pain down to the medial right calf. The prognosis was poor; treatment to date appropriate—future development of more severe leg symptoms could cause more re-evaluation and possible surgery to remove the lumbar disc.
21. During 1996 to early 2001, several visits to Dr. Dermetz indicated chronic back pain and depression, for which Perco-cet was prescribed.
22. On July 7, 2001, while the plaintiff was a patron at the Mohegan Sun Casino, he fell from a broken slot machine chair on which he was sitting onto the floor, landing on his buttocks and back. He was taken to Lawrence and Memorial Hospital emergency room by Casino paramedics, where he was treated and released to his own doctors for follow-up care.
23. At the time of the plaintiffs fall, he was working full time, with a considerable amount of overtime, in his trade as a machinist. He did this work in spite of his previous back and neck injuries related to his two previous worker’s compensation cases and an automobile accident, all of which left him with a chrome and persistent back pain and with a 14% disability of his back and a 9% disability of his neck. It was expected that with age, his disabilities would become worse. He was being treated with Percocet and Oxycontin, both very strong, powerful, and addictive narcotics for the flare up of pain, which allowed him to continue working.
24. Approximately 1-1/2 weeks after his fall at the Casino, the plaintiff returned to work. He was limited to light work, which continued until December 21, 2001. At the time of his fall, plaintiff was earning $1,070.00 weekly, including overtime. His *558 annual salary varied over the years. According to plaintiffs expert, his straight time annual earnings were $36,836.00 in 2001.
25. On September 14, 2001, plaintiff was treated at Lawrence and Memorial Hospital for a sleeping disorder (narcolepsy) which was a contributing factor in his inability to perform his job as a machinist where he operated highly sensitive machinery. This affliction was not related to the fall at the Casino and may be congenital in nature.
26. On September 22, 2002, a lumbar MRI scan was done and showed a small central protrusion (bulge) at L5-S1. When this was compared with the MRI report of November 1993, it is essentially an identical finding.
27. On February 22, 2003, an MRI of the cervical spine showed a moderate difuse central stenosis of the canal, probably due to a combination of congenital steno-sis, as well as difuse disc disease. There is bulging and multiple disc and central herniation at C4-C5, central and left sided herniation at C5-C6.
28. On June 28, 2003, an MRI of the plaintiffs cervical spine was taken and compared with a previous one of November 1993. The comparison showed some naturally occurring degeneration. The plaintiff only has a 8 millimeter spinal canal when 10 millimeter is the lowest limit or normal.
29. There is no significant worsening of plaintiffs condition attributable to the fall of July 7, 2001. He had a pre-existing chronic back condition which had existed for approximately 9 years before his fall at the Casino and was related to his previous work-related accidents, his previous automobile accident, as well as his congenital degenerative condition.
30. The fall did cause an increase in pam for a period of time and did precipitate a surgical procedure called I Did, performed at Yale New Haven Hospital in April 2002, which temporarily gave the plaintiff some pain relief, but was not successful in permanently correcting his preexisting chronic back condition.
31. On December 28, 2002, the plaintiff was injured in a motor vehicle accident and his treating physician at that time, Doctor Dougherty, found whiplash and reoccurring back pain which added to his previous injuries, and further increased his drug dependency.
32. The fall at the Casino was superimposed on his preexisting chronic and disabling back condition; increased his need for addicting pain medications; and eventually made it impossible for him to function safely and efficiently as a machinist. Also disabling him from continued work as a machinist was his problem with narcolepsy, probably an inherited condition, which made it dangerous and almost impossible for him to maintain work on a complicated machine.
33. Although plaintiff cannot ever resume his prior work as a machinist, he can do sedentary work, if and when he is willing to wean himself from his constant use of narcotics, whieh use is partially self imposed and partially attributable to his wrork and automobile injuries in the 1990’s, his fall and his post fall automobile accident.
34. Plaintiffs doctors appear to be trying to limit his use of narcotics by proposing various physical therapies, as well as pain management therapy, which he has resisted.
35. The plaintiff has exhibited a continued resistance to his doctor’s efforts to wean him from narcotics and has shown a lackluster effort to comply with physical *559 therapy, as well as a limited cooperation with the pain management physician recommended by his doctor.
36. Plaintiff incurred $35,354.65 in medical bills due to the fall at the Casino.
37. At the time of the Casino fall, plaintiff had a life expectancy of 45.38 years and a work life of 19.62 years.
38. Future surgery is only a remote (25%) possibility.

DISCUSSION

In awarding damages, this Court must determine plaintiffs condition, including his ability to work, prior to his July 2001 fall at the Casino and the extent to which this fall exacerbated plaintiffs already existing problems. This is a complicated exercise because of plaintiffs long and extensive medical history predating his 2001 fall at the casino.
In the 1990’s, the plaintiff sustained significant injuries to his neck and lower back as the result of two work related incidents at Electric Boat and an automobile accident. During this 1990’s time frame, doctors opined that plaintiff had a 9% impairment of the neck and a 14% impairment of the spine; a central disc bulge and annular tear in the L5-S1 area also were identified. An MRI further showed a chronic, congenital spondylosis superimposed on plaintiff’s back injuries.
Prior to his injuries at Electric Boat and the automobile accident in 1993, plaintiff was employed in a machinist position that was physically demanding. Because of the injuries, he was forced to accept a machinist job that was less strenuous than his .position at Electric Boat. Although plaintiff was a, good worker, who frequently sought overtime, he became increasingly dependent on prescribed narcotic drugs in order to cope with his neck and back pain.
In short, at the time of his fall in 2001, plaintiff already was suffering from significant neck and back pain which had affected his ability to work as a machinist without his seeking continued prescriptions for heavy drugs.
The preponderance of the evidence establishes that the pathology of plaintiffs disc protrusion and annular tear did not radiographically change as a result of. his fall at the Casino. The fall did produce a temporary spasm of his cervical and lumbar spine, as well as increased pain and suffering and the further use of prescribed narcotics. Moreover, the fall proved to be the proverbial “straw that broke the camel’s back” with regard to the plaintiffs career as a machinist, and plaintiff ceased working as a machinist in the latter part of December 2001.
However, the preponderance of the evidence establishes that plaintiffs fall at the Casino alone, did not so disable him that he lost the ability to perform other less strenuous, sedentary work. Rather, a contributing factor to plaintiffs inability to work was the motor vehicle accident on December 28, 2002, which resulted in whiplash and further back pain, further enhancing his dependency on drugs. Another factor contributing to plaintiff’s failure to resume work was his narcolepsy, diagnosed after this fall at the Casino.
In spite of all his serious physical problems, the evidence shows that, at the present time, the primary factor impeding plaintiff from seeking employment in a sedentary work environment is his dependency on drugs. Part of plaintiffs dependency, however, is self inflicted. The evidence shows that he has been unwilling to work with his doctors to limit his use of narcotics by participating in various physical therapies, including pain management, recommended by his doctors. Rather, plaintiff has resisted all efforts to reduce his drug dependence.
*560 In accordance with the above, plaintiff is awarded damages for lost wages as follows:
1. For the period July 7, 2001 to July 15, 2001, $1,070.00 is awarded, which represents his lost wages for his initial absence from work due to the fall.
2. For the period December 21, 2001 to December 28, 2002, the date of his second motor vehicle accident $56,710.00 is awarded. This amount represents full disability payment based upon the full wage plaintiff was receiving at the time of the fall, because, for this period of time, the temporary pain and suffering occasioned by the fall prevented him from working.
3. For the period after December 28, 2002, the Court finds that but for the second motor vehicle accident and plaintiffs resistance to lessening his drug dependency, plaintiff should have been able to return to work in sedentary employment earning at least 50% of his former salary. Using plaintiffs expert’s calculations based on a work life expectancy of 19.62 years and based on annual straight line earnings of $36,836.00 as a machinist, adjusted for growth, discounts and fringe benefits, plaintiffs future lost wages attributable to the fall are $595,442.00. This amount must be further adjusted by 50% for a sedentary employment position and, further, to reflect the prior damage awards set forth above for the periods July 7, 2001 to July 15, 2001 and December 21, 2001 to December 28, 2002. Accordingly, for the period after December 2002, plaintiff is awarded $239,941.00 for future lost wages.
4. Medical bills relating to the accident are $35,354.65; future medical bills are not related to this accident and should not be included in the award.
His total award for past medicals and past and future lost wages is $333,075.65, to which should be added $166,537.82, which represents a 50% add on based on the Mohegan Gaming Disputes Tribal Ordinance (MTO 98-1) formula in effect at the time of the fall at the Casino.
Therefore, the plaintiff is awarded $499,613.47, plus costs.[1]
First Past Lost Wage 1,070.00
Second Past Lost Wage 56,710.00
Medicals 35,854.65
Future Lost Wage 239,941.00
Subtotal $333,075.65
50% Non Economic Damages 166,537.82
Total $499,613.47
Judgment may enter for the plaintiff in the amount of $499,613.47, plus costs.

. Collateral source adjustments are not addressed. Both plaintiff and defendant's attorneys indicated they would handle this aspect; of the case on their own.